IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

S., *through his parents*,
    Plaintiff,

v.

WEST CHESTER AREA SCHOOL
DISTRICT,
    Defendant.

CIVIL ACTION
No. 2:18-cv-00816-AB

**January 14, 2019**                                                                  **Anita B. Brody, J.**

## MEMORANDUM

S., a minor child with disabilities, and his parents (referred to collectively as "S.") sue Defendant West Chester Area School District ("the District") alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* S.'s claims were initially reviewed and adjudicated by a hearing officer, William Culleton ("Hearing Officer"). The Hearing Officer granted S. partial relief on S.'s claims.

S. now files a Motion for Judgment on the Administrative Record petitioning this Court to reverse the Hearing Officer's decision not to award S. compensatory education for the period before December 2015. The District opposes S.'s motion and files its own Motion for Judgment on the Administrative Record.

I exercise jurisdiction to review the decision of the state educational agency under 20 U.S.C. § 1415(i)(2)(A). *See Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 268 (3d Cir. 2012). For the reasons below, I will deny Plaintiff's Motion for Judgment on the Administrative Record and grant Defendant's Motion for Judgment on the Administrative Record.

1

## I. BACKGROUND

### A.  Brief Overview of the IDEA and Section 504

"The IDEA protects the rights of disabled children by mandating that public educational institutions identify and effectively educate those children[] or pay for their education elsewhere if they require specialized services that the public institution cannot provide." *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009). "Accordingly, schools must: (1) identify children in need of special education services (Child Find); and (2) provide a [free appropriate public education, or "FAPE"] to disabled students." *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012). A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 188–89 (1982). An Individualized Education Program ("IEP") is "the primary mechanism for delivering a FAPE." *M.R.*, 680 F.3d at 269 (internal quotation marks omitted).

While the IDEA requires states receiving federal funding to provide a FAPE to all disabled children residing within the state, 20 U.S.C. § 1412(a)(1), Section 504 prohibits discrimination on the basis of disability in federally funded programs, 29 U.S.C. § 794(a). The Third Circuit has "held that there are few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition and [has] noted that the regulations implementing § 504 require that school districts provide a free appropriate education to each qualified handicapped person in its jurisdiction."[1] *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999)

---

[1] Although the IDEA and Section 504 overlap significantly, Section 504 is broader in scope:
> [I]t is well recognized that Section 504 covers more students than does the IDEA.  Students with disabilities who are eligible for services under IDEA are also covered by the prohibitions against discrimination on the basis of disability in Section 504 and its

2

(internal quotation marks omitted), *superseded by statute on other grounds as recognized by P.P.*, 585 F.3d at 730. "[C]ase law makes clear that a party may use the same conduct as the basis for claims under both the IDEA and the RA." *Andrew M. v. Del. Cnty. Office of Mental Health & Mental Retardation*, 490 F.3d 337, 349 (3d Cir. 2007). "Therefore, when a state fails to provide a disabled child with a free and appropriate public education, it violates the IDEA. However, it also violates [Section 504] because it is denying a disabled child a guaranteed education merely because of the child's disability."[2] *Id.* at 350.

"To the extent a school district fails to provide a student with a FAPE, a parent may file a due process complaint on behalf of his or her child, with a subsequent hearing held before an administrative hearing officer." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir. 2015) (citing 20 U.S.C. §§ 1415(b)(6), (f)(1)(A)). "A party dissatisfied with the result of that hearing may then file an action in state or federal court." *Id.* (citing 20 U.S.C. § 1415(i)(2)).

---

> implementing regulation at 34 CFR Part 104, but students covered only by Section 504 are not entitled to the rights and protections enumerated by IDEA and its implementing regulations at 34 CFR Part 300.

*Molly L. ex rel. B.L. v. Lower Merion Sch. Dist.*, 194 F. Supp. 2d 422, 427 n.3 (E.D. Pa. 2002) (internal quotation marks omitted).

[2] A violation of the IDEA is not a *per se* violation of Section 504. *Andrew*, 490 F.3d at 349–50. To prevail on a § 504 claim, a plaintiff must prove:

> (1) [he or she] is "disabled" as defined by the Act; (2) [he or she] is "otherwise qualified" to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) [he or she] was excluded from participation in, denied the benefits of, or subject to discrimination at, the school. In addition, the plaintiff must demonstrate that defendants know or should be reasonably expected to know of his disability.

*Ridgewood*, 172 F.3d at 253 (citations omitted). Denial of a FAPE satisfies prong four because "[i]t is the denial of an education that is guaranteed to all children that forms the basis of the claim." *Andrew*, 490 F.3d at 350; *see also Centennial Sch. Dist. v. Phil L. ex rel. Matthew L.*, 799 F. Supp. 2d 473, 489 (E.D. Pa. 2011) ("Parents are correct in asserting that they can establish that [the student] was denied a benefit to which all other students were entitled simply on the basis that [the student] was disabled if they can establish a denial of a FAPE.").

**B. Factual Background[3]**

   **1. S.'s Academic Development and the District's Actions**

S. is a minor child. In the fall of 2013, at the beginning of his third-grade year (2013-2014), S. was diagnosed with epilepsy. *Id*. The medical reports indicated that S. was having as many as 20 to 30 intermittent seizures a day; with medication the seizures decreased to 5 to 7 per month by January 2014. N.T. 33; P-4, P-5, P-6, P-7.

In November 2014, during S.'s fourth-grade year (2014-2015), Parents submitted a written request for the District to evaluate S. for IDEA eligibility. F.F. at 3. Pursuant to Parents' request, the District completed an Evaluation Report on February 27, 2015 (the "February 2015 Evaluation Report"). F.F. at 4. The February 2015 Evaluation Report considered a wide variety of information and data, including results relating to S.'s memory, decision speed, understanding of directions, phonological processing, performance on a battery of standard achievement tests and subtests, and his classroom performance and behavioral and emotional characteristics. F.F. at 4-6. The February 2015 Evaluation Report concluded that S. was:

> ineligible for special education services under the IDEA. The evaluation found that Student experienced moderately limited alertness in the classroom, meeting the IDEA definition of Other Health Impairment, but concluded that Student was not a child with a disability as defined in the IDEA because Student did not need specially designed instruction, in view of Student's grade-level progress and achievement in the curriculum.

F.F. at 4. Because the District determined that S. was ineligible for specially designed instruction ("SDI"), the District did not develop an individualized education plan ("IEP") for S. under the IDEA. F.F. at 6. Instead, in March 2015, the District offered S. a Section 504 Service

---

[3] The facts presented are primarily based upon the Findings of Fact in the Hearing Officer's Decision. Any facts presented that are not based on the Hearing Officer's Findings of Fact come from the administrative record. For such citations, I follow the Parties' notation. Citations to "N.T." refer to Notes of Testimony; citations to "S–" with an exhibit number refer to the exhibits of West Chester Area School District; citations to "P–" with an exhibit number refer to the exhibits of S.

4

Agreement. *Id.* The Service Agreement, to which Parents and the District consented, provided accommodations to S. to address the issues identified in the February 2015 Evaluation Report but did not call for SDI:

> At the District's invitation, on March 11, 2015, Parent participated in the development of the recommended section 504 service agreement, which included 23 accommodations, including a number of those recommended in the February 2015 evaluation report. Accommodations addressed seizure response; mathematics (through use of math tools on assessments); testing accommodation (separate site and use of math tools); attention; complex directions (various modifications to the giving of directions); fatigue in the classroom (but not including reduced work load); the need for counseling for maintenance of self-esteem and avoidance of depression; and social skills. The accommodations also included provision of small group instruction at teacher discretion and supports for organization. The accommodations did not include occupational therapy for handwriting.

*Id.*

In the fall of 2015, S. entered Hillsdale Elementary School for his fifth-grade year (2015-2016). *Id.* S.'s teachers continued to evaluate S.'s performance and quickly recognized that S. was struggling at school academically, socially, and emotionally. F.F. at 6-7. By October 7, 2015, S.'s teachers referred him for a second evaluation, which was issued on November 30, 2015. F.F. at 7. The November 2015 Evaluation Report added new information about S.'s performance in fifth grade:

> The evaluation report incorporated the recommendations for modifications that had been provided in the February 2015 evaluation report. It added some modifications not mentioned there, to address including direct instruction for mathematics fact fluency; applying concepts; and spelling and mechanics. It added testing accommodations including reading questions aloud and extended time; greater use of visuals and modeling; and word bank for spelling.

F.F. at 7. As a result, the District developed an IEP for S. in December 2015. F.F. at 7-8. The District met again on March 31, 2016 and added to the initial IEP. F.F. at 8. In May 2016, the District offered an IEP for S.'s sixth-grade year (2016-2017) with additional supports. F.F. at 9. Because S.'s parents believed the program and placement offered in this May 2016 IEP proposal

5

was inappropriate, S.'s parents ultimately decided to place S. at Upland Country Day School, a private academic school, and provided the District with written notice of their decision. *Id.*

### 2. S.'s Challenge to the District's Actions

On April 3, 2017, S. filed an administrative special education due process complaint challenging the District's actions on several grounds. F.F. at 1. In his complaint, S. alleged that the District failed to satisfy IDEA's "child-find" requirement, which obligates the District to properly and timely identify and evaluate potentially eligible students. *Id.* S. also argued that the District provided inappropriate programming and placement to him from January 2013 through Spring 2016 under the IDEA and Section 504's FAPE requirement. *Id.* S. therefore sought an order that the District provide compensatory education for the period January 2013 through May 2016 and reimburse S.'s tuition at the Upland Country Day School. F.F. at 9.

On August 1, 2017, following a round of evidentiary hearings, the Hearing Officer charged with adjudicating S.'s challenge to the District's actions issued a decision on the statute of limitations (the "SOL Decision"). The Hearing Officer decided that S.'s claims would be limited to those arising on or after April 3, 2015, two years prior to the filing of the due process complaint. *See generally* SOL Decision. The Hearing Officer found that S.'s claims arising prior to that date were untimely. *Id.*

On November 27, 2017, following several more days of hearings, the Hearing Officer issued a second decision on the merits of S.'s claims ("HO Decision"). *See generally* HO Decision. Importantly, despite his prior ruling on the statute of limitations, the Hearing Officer heard evidence and ruled in the alternative on S.'s claims relating to the District's alleged violation of the IDEA and Section 504 in relation to the District's February 2015 Evaluation Report and the March 2015 Section 504 Agreement. *See* HO Decision at 11-15. The Hearing

Officer found that the February 2015 Evaluation Report was sufficiently timely, careful and thorough to satisfy the District's "child-find obligations" under the IDEA. *Id.* The Hearing Officer also found that the Section 504 Agreement appropriately addressed the problems identified in the February 2015 Evaluation Report. *Id.* As such, the Hearing Officer found that, in the alternative to his ruling on the statute of limitations, S. was not entitled to relief on those claims because the District had provided a FAPE to S. during the relevant time. *Id.*

The Hearing Officer did, however, grant S.'s request for relief in part. *Id.* at 2. The Hearing Officer ruled that the District's December 2015 IEP was inappropriate because it failed to provide S. with a required Goal and SDI in reading comprehension and a required Goal in written expression. *Id.* The Hearing Officer ordered that the District provide 45 minutes of compensatory education per day for every day that S.'s school was in session from December 22, 2015 through March 31, 2016. *Id.* at 25.

## II. LEGAL STANDARD

"When considering an appeal from a state administrative decision under the IDEA, district courts apply a nontraditional standard of review, sometimes referred to as 'modified *de novo*' review." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010). Under this standard, the district court must give "due weight" to the findings of the administrative hearing officer. *Id.* "Factual findings from the administrative proceedings are to be considered *prima facie* correct. If a reviewing court fails to adhere to them, it is obliged to explain why. The court is not, however, to substitute its own notions of sound educational policy for those of local school authorities." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003) (citations, quotation marks, and brackets omitted).

"[C]laims for compensatory education and tuition reimbursement are subject to plenary

7

review as conclusions of law. . . . [W]hether the District fulfilled its FAPE obligations [is] subject to clear error review as [a question of fact]." *P.P.*, 585 F.3d at 735. Additionally, "whether an IEP is appropriate is a question of fact." *S.H.*, 336 F.3d at 271. "Within the confines of these standards, a district court is authorized to make findings based on the preponderance of the evidence and grant the relief it deems appropriate . . . ." *D.S.*, 602 F.3d at 564. A district court is to respect the credibility determination of the witnesses made by the administrative hearing officer unless "nontestimonial evidence" requires a contrary conclusion. *S.H.*, 336 F.3d at 271. "[T]he party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged." *M.R.*, 680 F.3d at 270.

## III. DISCUSSION

### A. Compensatory Education for the Period Prior to December 2015

S. alleges that the District's February 2015 Evaluation Report failed to comply with the IDEA's "child-find" obligations and that the District's March 2015 Section 504 Service Agreement failed to provide a FAPE to S. under both the IDEA and Section 504. Accordingly, S. seeks an award of additional compensatory education.[4]

Although the Hearing Officer found that S.'s claims for this time period were untimely, the Hearing Officer heard and analyzed all evidence on S.'s claims in relation to the February 2015 Evaluation Report and the March 2015 Section 504 Service Agreement. After a close examination of the facts at issue, including several days of hearings, the Hearing Officer found that the District did not violate the IDEA or Section 504 in the period leading up to December

---

[4] To succeed, S. must prevail on two counts. First, S. must successfully challenge the Hearing Officer's statute of limitations ruling. Second, S. must also successfully challenge the Hearing Officer's in-the-alternative ruling on the merits of S.'s claims.
  Because S. has failed to successfully challenge the Hearing Officer's in-the-alternative ruling on the merits, he is unable to recover. Therefore, I do not reach S.'s challenge to the Hearing Officer's ruling on the timeliness of S.'s claims.

8

2015. Instead, the Hearing Officer found that S.'s February 2015 Evaluation Report was thorough and well-supported:

> [T]he District had a comprehensive knowledge of [S.'s] needs based upon the February 2015 [E]valuation [R]eport. That report depicted a child whose cognitive ability was well within the average range overall, and deviated below that range only slightly in a few areas of weakness. . . . The report also noted that [S.] was diagnosed with epilepsy, and experienced multiple seizures. It noted that this disability would be expected to affect [S.'s] attention, stamina and ability to follow complex or multi-step directions. . . . [S.'s] history – after being diagnosed and before [S.'s] seizures were brought under better but not perfect control with medications – was one of high achievement in school . . . . In fourth grade, as the demands of the curriculum became more difficult, [S.'s] achievement was lower, but it remained within the average range – at grade level and with marks at the level of "B" and "C" – expected for a child with average intelligence. Standardized testing indicated average achievement in reading comprehension, mathematics (except fluency) and writing. Standard behavior inventories elicited no clinically significant emotional, behavioral or social problems, nor did teachers report observing problems in these domains, except for a certain reticence or withdrawal socially, which teachers were addressing through regular education interventions. . . . [T]he report recommended a number of interventions to address [S.'s] cognitive weaknesses with complex directions and mathematics fluency, as well as measures to help improve [S.'s] self-esteem and reduce anxieties, especially in testing. The District issued a Section 504 plan with 23 accommodations to address Student's needs.

HO Decision at 18-19. The Hearing Officer then concluded, after evaluating the District's course of action in light of the February 2015 Evaluation Report:

> I have reviewed both the recommendations in the evaluation report and the subsequent section 504 service agreement, and I conclude that the service agreement addresses Student's educational needs appropriately and comprehensively with modifications in the regular education setting. Contrary to Parents' argument, the modifications in the service agreement do not fail in any material way to address the needs identified in the February 2015 evaluation report. . . . [T]here was no red flag indicating that the District must reconsider its section 504 interventions, or revisit its evaluation denying the need for special education. I find no basis to conclude that the District's services were inappropriate based upon what it knew at this point in time.

HO Decision at 19-20.

An independent review of the record indicates that the Hearing Officer correctly decided that the District acted appropriately in relation to the February 2015 Evaluation Report and the March 2015 Section 504 Service Agreement.

**1. Whether the District's February 2015 Evaluation Report Complied with IDEA**

"The IDEA protects the rights of disabled children by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere if they require specialized services that the public institution cannot provide." *D.K.*, 696 F.3d at 244. "Accordingly, schools must: (1) identify children in need of special education services (Child Find); and (2) provide a FAPE to disabled students." *Id.* A District Court must "assess whether a school district identified and evaluated a student suspected of having a qualifying disability within a reasonable time in light of the information and resources possessed by the district." *M.R.*, 680 F.3d at 273 (quotation marks omitted).

S. argues that the February 2015 Evaluation Report was inappropriate because it concluded that S. was not eligible for an IEP under the IDEA. Instead of an IEP, the February 2015 Evaluation Report identified accommodations that S. would receive through a Section 504 Service Agreement. S. contends that the February 2015 Evaluation Report and its conclusion were inappropriate because S. struggled over the course of the remainder of his fourth-grade year (2014-2015) and during the beginning of his fifth-grade year (2015-2016). In support of this argument, S. points to the District's subsequent evaluation of S. in November 2015. S. argues that, since the District concluded in its November 2015 Evaluation Report that S. was eligible for an IEP and SDI, the February 2015 Evaluation Report must have been inappropriate.

Under Third Circuit precedent, S.'s reliance on the District's reevaluation of S. is misplaced. In *D.K. v. Abington School District*, the plaintiff challenged a school district's compliance with its duties under the IDEA on the grounds that the district conducted an

inappropriate initial evaluation in April 2006. 696 F.3d at 249–250. The plaintiff argued that because a subsequent school district evaluation in November 2007 reached a different result, the school district's initial evaluation must have been insufficient. *Id.* at 251. The Court in *D.K.* explicitly rejected the plaintiff's reasoning: "[t]he mere fact that a subsequent evaluation of [the plaintiff] yielded a different result—*i.e.* he was found disabled with an 'other health impairment' in November 2007 but did not qualify in April 2006—does not necessarily render the earlier testing inadequate." *Id.*[5] The Third Circuit reached a similar conclusion in *M.R.* 680 F.3d at 273. The Court held that a later reevaluation that reaches a different conclusion does not suffice to show that the plaintiff had been denied a FAPE in the period between the initial evaluation (finding ineligibility) and the second evaluation (finding eligibility). *Id.* The Court reasoned that after an evaluation concluding that a student is not eligible for special education under the IDEA, "the school district must be afforded a reasonable time to monitor the student's progress before exploring whether further evaluation is required." *Id.*

      S.'s challenge to the Hearing Officer's decision fails. The District monitored S.'s progress in the classroom after his initial evaluation and found, after taking that new information into account in its November 2015 Evaluation Report, that S. should be eligible for SDI and therefore eligible for an IEP. Taking this and other relevant factual findings from the administrative proceedings as *prima facie* correct, an independent review of the record does not evince sufficient contrary nontestimonial, extrinsic evidence to undermine the Hearing Officer's conclusion that the District's February 2015 Evaluation Report complied with the IDEA. *See*

---

[5] S. attempts to distinguish *D.K.* S. argues that in *D.K.*, unlike in this case, the school district's later reassessment was based on a broader array of new assessments and included a new neurological assessment. S. argues that the District's reevaluation in this case included no new information or testing. But S. ignores that the new evaluation did include new information. Specifically, the November 2015 Evaluation Report included substantial new evidence from S.'s teachers' in-class observations about S.'s progress. S.'s attempt to distinguish *D.K.* on these grounds therefore fails.

*S.H.*, 336 F.3d at 270. Therefore, I will deny S.'s Motion for Judgment on the Administrative Record as it relates to the District's February 2015 Evaluation Report and the District's compliance with its "child-find" obligations during the relevant period.

**2. Whether the March 2015 Section 504 Service Agreement Provided S. with a FAPE[6]**

S. also contends that the District's March 2015 Section 504 Service Agreement failed to provide S. with a FAPE. Specifically, S. argues that the Section 504 Agreement did not provide S. with SDI (especially consistent small group and direct instruction) that he required to make meaningful educational progress.

S.'s objections to the Hearing Officer's finding fall short. Here, S. primarily adopts the same line of reasoning that he used to challenge the February 2015 Evaluation Report. Specifically, S. contends that the March 2015 Section 504 Service Agreement was inappropriate because the District subsequently decided in Fall 2015 that S. was eligible for SDI and an IEP. As discussed above, this line of reasoning fails under Third Circuit precedent given the pace at which children's needs change as they develop and progress through the curriculum. *See. D.K.*, 696 F.3d at 249-251; *M.R.*, 680 F.3d at 273. Taking the Hearing Officer's factual findings on this issue as prima facie correct, an independent review of the record does not evince sufficient contrary nontestimonial, extrinsic evidence to undermine the Hearing Officer's conclusion that the District's March 2015 Section 504 Service Agreement provided S. with a FAPE. *See S.H.*, 336 F.3d at 270. Therefore, I will deny S.'s Motion for Judgment on the Administrative Record

---

[6] The Section 504 Service Agreement was issued pursuant to Section 504. However, S.'s challenge concerns whether the Agreement brought the District into compliance with the requirements of the IDEA. As such, the Hearing Officer evaluated whether the Section 504 Service Agreement provided S. with a FAPE—a factual finding about the appropriateness of the District's intervention under both the IDEA and Section 504. *P.P.*, 585 F.3d at 735 ("[C]laims for compensatory education and tuition reimbursement are subject to plenary review as conclusions of law. . . . [W]hether the District fulfilled its FAPE obligations—[is] subject to clear error review as [a] question[] of fact.").

as it relates to the District's March 2015 Section 504 Service Agreement and provision of a FAPE to S. during the relevant period.

## IV. CONCLUSION

For the reasons set forth above, I will deny S.'s Motion for Judgment on the Administrative Record. I will grant the District's Motion for Judgment on the Administrative Record.

s/Anita B. Brody
_____
ANITA B. BRODY, J.

Copies **VIA ECF** on 1/14/2019